MARTIN, The JOHN. See Cases Nos. 7,357 and 7,358.

MARTIN, The MARIA. See Case No. 9,079.

## Case No. 9,175.

MARTINS v. BALLARD et al.

[Bee, 51.] [1]

District Court, D. South Carolina. Oct. 1, 1794.

PRACTICE IN ADMIRALTY — LIBEL IN PERSONAM—TORT—DAMAGES.

Damages will be assessed in this court, upon a libel in personam, for commission of trespass or tort upon the high seas.

[Cited in Plummer v. Webb, Case No. 11,233; Camden & A. R. Transp. Co. v. The Lotty, Id. 2,337a; New Jersey Steam Nav. Co. v. Merchants' Bank of Boston, 6 How. (47 U. S.) 432.]

In admiralty.

BEE, District Judge. This is a libel for damages. The evidence is, in all material points, the same that was produced in the cause of Jansen v. The Magdalena [Case No. 7,216], and these defendants; except only as to the matter of damages. I shall not, there-

[1] [Reported by John S. Newberry, Esq.]
[2] [Decree affirmed in the circuit court. Case unreported.]

[1] [Reported by Hon. Thomas Bee, District Judge.]

fore, recapitulate that evidence; the former case having been so recently decided.

The proceedings are, now, in personam; but the principles of both cases, as relates to the law of nations and to treaties, are the same. The plea to the jurisdiction of the court is made as by [William] Talbot, with this difference, that, upon the former occasion, [Edward] Ballard made default, and every charge was of course taken, as against him, pro confesso. Here he has pleaded, and his advocate relies upon the ground not taken in the first case. I shall consider the arguments by which it is contended that a difference exists as to the merits. The former decree was founded on the 19th article of the treaty with the United Netherlands. It is said that Ballard's commission does not come within that article.

It is also contended that the schooner L'Ami de la Liberté is a vessel belonging to the French republic, and therefore not within the letter or spirit of the 19th article of the treaty with Holland. That any American citizen may lawfully command a public vessel, under French authority, and may of right examine, on the high seas, vessels belonging to neutrals or to the enemies of France. Molloy, 1, 3, 12. That Captain [Peter] Martins, having made resistance to such examination, must abide by the consequences of his own imprudence.

I have already declared my opinion of the authority under which Ballard acted. It runs thus:

"In the Name of the French People. On board the Tigre, 13th of Germinal, 2d year of the republic, &c. Peter John Vanstable, rear admiral commanding a division of the naval forces of the republic, stationed on the coast of the United States of America. In consequence of the offer of citizen Sinclair to enter, voluntarily and from pure love of liberty, into the service of the French republic, and the engagement on his part to conduct himself altogether as a good French republican, I give him an order to take command of the schooner 'L'Ami de la Liberté,' and to fulfil the commission confided to him by me. (Signed) Rear Admiral Vanstable.

"We Anthony Louis Fonsportuis, consul of the French republic, charged with the consul's office at Charleston, certify to all whom it may concern that the citizen John Sinclair, having declared to us his inability to go to sea, requires us to transfer the present commission to the citizen Edward Ballard. We have therefore transferred the said commission to the said Ballard, to be executed by him in the place of said Sinclair."

Given at the consul's office.

This commission, however legal for the purpose mentioned in it, was illegal when applied to others, so different from its tenor; and Ballard was highly criminal in so converting and abusing it. What proof is offered that this vessel belonged to the French republic? The admiral's commission does not describe her as such; nor is she so called in the consul's letter to the collector of Charleston.

He says, only, that she is under a special commission of Admiral Vanstable, charged by him with a secret expedition. That it is indispensable that she should be allowed to go to sea; and that she does not come within the embargo. But he does not say she belongs to the republic. If we examine the evidence of Mr. Airs, we shall find that at the time when she was employed by Admiral Vanstable in the business committed by him to Sinclair (which both Airs and Sasportas explained to be unrigging and prevention from sailing of certain vessels at Norfolk) he (Airs) sailed in her from the fleet to that place. She was then, he says, commanded by Ballard, and Sinclair appeared as a passenger on board. He says further: that she was raised from a pilotboat, and was fitted with railing and stanchions, and a streak above wale, for guns. When she arrived here, she came in under American colours: Wallace the boarding officer, minuted her as a Virginia pilotboat, armed in Norfolk. The collector says she was entered as such, by Sinclair; that he alone managed all that related to her at the customhouse, even after she had been transferred by the consul to Ballard. Add to this Craig's evidence, and no doubt can remain as to her being private, not public property. Here is, indeed, proof positive from the acknowledgment of Sinclair himself, and of Talbot, that she was owned in part by Sinclair, whose partnership with the French republic is too ridiculous to be credited. All reliance upon the ground of her being a public vessel of that government must fail. As therefore Talbot, under the treaty with Holland, was not at liberty to capture Dutch property; as Ballard's was a private vessel, and himself incapable of making lawful capture, for want of a lawful commission; I can do no otherwise in this case than I did in that of Jansen v. The Magdalena [supra], I must sustain the jurisdiction of this court, and declare the proceedings of both these defendants to be wholly illegal.

It remains to inquire whether the court has any, and what, further jurisdiction in cases of this nature. The 9th section of the judiciary law of congress vests this court with exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction. This necessarily includes all matters arising on the high seas, of a civil nature; all contracts, torts and trespasses; and, by the law of nations, is extended to all civil contests between our own citizens, and between foreigners, as to the right of property which has been illegally and piratically taken on the high seas. Such property, may if retained, and brought within the jurisdiction of the court, be restored: and equivalent damages may be given, if it has been disposed of. The court may proceed civiliter, even where it is, expressly, without criminal jurisdiction. In Le Caux v. Eden Doug. 594, it is shewn, by two cases, that the court of admiralty in England, sitting as an instance court, restored

property taken by pirates, who had not been apprehended.

The supreme court of the United States having, in Glass v. The Betsey [3 Wall. (3 U. S.) 6], decided that this court is possessed of all the powers of a court of admiralty, whether as an instance or prize court, it must be authorized to inquire into, and to determine the quantum of damages and costs in all cases of trespass or tort. The case from Douglas above reported is supported by that of Livingston v. M'Kenzie, in 3 Durn. & E. [3 Term R.] 333. And similar proceedings have been had formerly in this court, as appears by reference to its records. I will, at present, content myself with mentioning the case of Walton v. Jeamans, in August, 1748 [unreported]. There the defendant was condemned to pay £500 for unlawfully capturing and entering the libellant's vessel and taking therefrom the goods, wares, and merchandise enumerated in the libel. Hopk. 137, is full to the same point, viz. the power this court has to assess damages in personam. I shall proceed to do so in the case before me.

It is pretended by the defendants that they boarded the actor's vessel (Fortune der Zee) merely for the purpose of examining her. Why then did they, in the first instance, order her to strike? and why, after boarding her, and finding that she was Dutch property, did they not relinquish the prize? Their conduct, on the preceding day, in the case of the Magdalena makes their real intentions too plain. But the bringing off the captain and crew of the Fortune, when they found themselves obliged to give up the ship, serves to shew that the folly of their conduct was equal to the guilt of it: for had they been left, the vessel would have proceeded on her voyage, and the trouble and expense of this suit would have been spared. It has been proved that the sails and rigging were much injured; and though this has been attributed to the circumstance of the vessel's going into the Havanna, it is neither probable that it was so, nor was any evidence adduced to support the assertion.

I find by reference to merchants of respectability, well acquainted with such business, that the amount of damages done to the sails and rigging could not be less than... Dollars 500
The pay and wages of a captain and seamen to navigate her to Holland is, at least........... 300
(I make no allowance for demurrage at the Havanna, as it appears that the vessel waited there for the fleet, not choosing to sail alone.)
From statements in the libel, which are not contradicted, and from information of the witnesses, I calculate captain Martin's damage, by loss of clothes, plate, &c. at.. Dollars 750
His pay as captain, from 18th May to 18th December, (seven months) when he may probably get back to Holland, amounts, at thirty dollars per month, to.......... 210
His expenses here for four months, at thirty dollars per month..... 120
Counsel's fees ................. 150
                                    ——
    Total amount ............ Dollars 2,030

Of this sum I decree to the owners of the ship.............. Dollars 800
To the captain, as above....... Dollars 1,230

As both defendants were included, by consent of their counsel, in this decision, I adjudge and order that each of them pay one moiety, say ten hundred and fifteen dollars, of the above total amount; and that they pay the costs of suit. I direct further that twelve hundred and thirty dollars be paid to the captain of the Fortune der Zee; and the remaining eight hundred deposited in the branch bank here, till applied for by the owner or owners of the ship, or their authorized agent.

[NOTE. Ballard, who had been surrendered into custody by his surety, made application to be allowed to take the oath for the relief of persons imprisoned for debt. The application was refused. Case No. 9,175. There was an appeal in the case of Jansen v. Vrow Christina Magdalena (Case No. 7.216) to the circuit court. It was there affirmed. Case unreported. It was then appealed to the supreme court, when the decree was again affirmed. 3 Dall. (3 U. S.) 133.]